**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Leonardo Dualan, et al.,<br><br>    Plaintiffs<br><br>v.<br><br>Jacob Transportation Services, LLC,<br><br>    Defendant | 2:14-cv-01135-JAD-NJK<br><br>**Order Granting in Part and Denying in Part Motion for Conditional Certification of Collective Action and Other Related Relief**<br><br>[ECF 63] |
| And all related matters | |

    Shuttle-bus drivers Leonardo Dualan, Zoltan Nemeth, and Jamin Vergara sue Jacob Transportation Services, LLC under the Fair Labor Standards Act ("FLSA") and Nevada's labor laws for failing to pay them at least a minimum wage for every hour worked.[1]  Plaintiffs move for conditional certification of this case as a collective action, equitable tolling of the statute of limitations, and approval of the notice of and consent-to-sue forms for this collective-action group.[2]  Jacob opposes the certification request, arguing that the plaintiffs have applied the wrong legal standard, failed to support their request with sufficient evidence, do not clarify what claims they are seeking to conditionally certify, and have failed to show that equitable tolling is warranted.[3]  Finally, Jacob raises a host of issues with plaintiffs' proposed forms.[4]

    I find that the more lenient first-stage analysis for FLSA conditional certification is appropriate at this juncture.  I also find that plaintiffs have provided sufficient evidence to support a finding that the potential opt-in plaintiffs may be similarly situated.  I further find that plaintiffs' averments suggest, at this preliminary stage, that they were subject to a company-wide pattern, plan, policy, decision, or practice that undergirds their FLSA claims for minimum-wage,

---

[1] ECF 1.

[2] ECF 63.

[3] ECF 68.

[4] *Id.*

overtime, and wage-deduction violations.[5]  Accordingly, I find that FLSA conditional

certification of the minimum-wage, overtime, and wage-deduction claims on behalf of all current

and former shuttle-bus drivers who were employed by Jacob from July 10, 2011, to the present is

warranted, and thus grant that portion of plaintiffs' motion.

I approve plaintiffs' proposal to serve the notice on the opt-in plaintiffs through the U.S.

mail at their last-known addresses and to require that Jacob post the notice in a conspicuous place

where shuttle-bus drivers congregate at Jacob's business address.  I also approve plaintiffs'

request that the potential plaintiffs be provided a 90-day opt-in period.  I likewise approve

plaintiffs' request that Jacob produce, in a computer-readable data file, the names and last known

addresses for the potential opt-in plaintiffs.  But I decline to approve the proposed notice and

consent-to-sue forms because they require significant changes.  Instead, I direct the parties to

meet and confer and resubmit proposed notice and consent-to-sue forms by **April 8, 2016**.  And

if plaintiffs' counsel desire to be designated as interim counsel for the opt-in plaintiffs, they are

directed to make that request to the court by **April 8, 2016**.  Finally, I find that a minimal amount

of equitable tolling is warranted to offset any unfair prejudice that the potential opt-in plaintiffs

could suffer because plaintiffs' certification motion has been pending but unresolved for over six

months.  Accordingly, I equitably toll the statute of limitations from October 19, 2015, until

Jacob provides the requisite contact information to plaintiffs' counsel.

### Discussion

**A.   Conditional certification**

The FLSA gives employees the right to sue their employer when they are not fairly

compensated for their work.[6]  Employees may sue individually or as part of a collective action

---

[5] ECF 1 at 5–7 ¶¶ 23–40 (plaintiffs' first claim alleges minimum-wage and overtime violations under the FLSA, and plaintiffs' second claim alleges wage-deductions violations under the FLSA).

[6] *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting *Overnight Motor Transport. Co. v. Missel*, 316 U.S. 572, 578 (1942) (internal quotation marks omitted) (quoting a message by President Roosevelt)); *see also* 29 U.S.C. § 206–07 (providing an employee with a

under 29 U.S.C. § 216(b) on behalf of themselves and other similarly situated employees.[7]
Whether to permit a collective action under the FLSA is within the court's discretion, and neither
the Supreme Court nor the Ninth Circuit has defined "similarly situated."[8]  I follow the courts in
this circuit by considering certification[9] in two stages.[10]

In the first stage, courts determine whether the potential class should receive notice of the
suit.[11]  Conditional certification "require[s] little more than substantial allegations, supported by
declarations or discovery, that the putative class members were together the victims of a single
decision, policy, or plan."[12]  "At this procedural stage, the court does not resolve factual disputes,

---

right to sue against her employer when the employer fails to pay a minimum wage or overtime
wages).

[7] *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004) (citing 29 U.S.C. §
216(b)); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000))
(citation omitted).

[8] *Leuthold*, 224 F.R.D. at 466 (citation omitted); *Small v. Univ. Medical Ctr. of S. Nev.*, 2013 WL
3043454, 2:13-cv-298-APG-PAL, at *1 (D. Nev. June 14, 2013).

[9] For purposes of this order, I use the terms "class" and "certification" in a colloquial sense, as
the point at this stage is to approve the sending of a notice of a collective action to similarly
situated employees, and no "class" is being certified under FRCP 23.  *See Morgan v. Family
Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) (noting that "certification" of a
collective action is a device to facilitate notice to potential class members and does not actually
"create a class of plaintiffs" for a FLSA collective action).  "'Certification' is neither necessary
nor sufficient for the existence of a representative action under FLSA, but may be a useful 'case
management' tool for district courts to employ in 'appropriate cases.'"  *Myers v. Hertz Corp.*,
624 F.3d 537, 555 n.10 (2d Cir. 2010) (quoting *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S.
165, 169 (1989)).

[10] *Leuthold*, 224 F.R.D. at 466–67.

[11] *Id.* (writing that conditional certification is "based primarily on the pleadings and any affidavits
submitted by the parties").

[12] *Benedict v. Hewlett-Packard Co.*, 13-CV-00119-LHK, 2014 WL 587135, at *5 (N.D. Cal. Feb.
13, 2014) (quoting *Villa v. United Site Servs. of Cal.*, 5:12-CV-00318-LHK, 2012 WL 5503550,
at *13 (N.D. Cal. Nov. 13, 2012) (citation omitted); *see also Morton v. Valley Farm Transport,
Inc.*, C-06-2933-SI, 2007 WL 1113999, at *2 (N.D. Cal. Apr. 13, 2007); *Thiessen v. Gen. Elec.*

decide substantive issues going to the ultimate merits, or make credibility determinations."[13]   It is inappropriate to weigh the merits of the underlying claims now; the issue is "whether potential opt-in plaintiffs may be similarly situated."[14]   Because courts generally have limited evidence at this initial stage, the standard is lenient, and it typically results in conditional certification.[15]

After the record has been developed through discovery and the opt-in-notice process is complete, the court employs a "more stringent factual analysis," typically triggered by the defendant's motion to decertify.[16]   If, during this second stage, the court determines based on this more rigorous inquiry that the plaintiffs are not similarly situated, "the court may decertify the class and dismiss the opt-in plaintiffs without prejudice."[17]

### 1. First-stage analysis is appropriate at this time.

Jacob argues that I should apply the more stringent second-stage analysis to decide whether conditional certification is warranted because the parties are conducting discovery in phases and the first phase, which focuses on plaintiffs' "individual claims and discovery relating

---

*Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

[13] *Lynch v. United Servs. Auto. Assn.*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citation omitted).

[14] *Id.* at 368–69 (citing *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated.")); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist here.") (citation omitted)).

[15] *Leuthold*, 224 F.R.D. at 467 (citations omitted).

[16] *Id.* at 467–68.

[17] *Id.*

to class certification,"[18] has concluded.[19]  Plaintiffs reply that, in keeping with the scheduling order, no merits-based discovery has been conducted.[20]

In *Leuthold v. Destination America*, ths circuit's oft-cited decision on the two-step FLSA certification analysis, the district court was faced with "a close question" of which stage of the analysis to apply.[21]  Discovery was still in "a state of flux,"[22] and the court concluded that it would be anomalous "to reach the questions governing the standard for decertification without ever reaching the threshold question whether conditional certification and notice are appropriate."[23]

Other courts considering the question of whether to skip the low, first-phase analysis and proceed directly to the more rigorous one have done so based on an undeveloped state of the discovery record and the desire to permit the opt-in process to be completed.[24]  As one court observed:

> Skipping to the second stage not only requires the court to evaluate an incomplete (although potentially substantial) factual record—it interferes with the future completion of that record.  Separate from the risk of an incomplete factual record, "[b]ypassing the notice stage altogether . . . might deprive some plaintiffs of a meaningful opportunity to participate."  Measured against these dangers, delaying the second stage analysis risks little harm to defendant, who will be free to move for decertification "once the factual record has been finalized and the time period for opting in has expired."[25]

---

[18] ECF 18 at 2.

[19] ECF 68 at 3.

[20] ECF 69 at 3.

[21] *Leuthold*, 224 F.R.D. at 467.

[22] *Id.*

[23] *See id.* at 468.

[24] *See e.g. Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 629 (E.D. Cal. 2009).

[25] *Id.* (quoting *Leuthold*, 224 F.R.D. at 464–68, and collecting cases).

I am persuaded of the continued utility of the first-stage analysis in this case despite the fact that the first phase of discovery has closed and the record is partially developed.  The opt-in plaintiffs are still unidentified, and courts have also recognized that "[t]he heightened scrutiny standard is only appropriate after the opt-in period has ended and the court is able to examine whether the *actual* plaintiffs brought into the case are similarly situated."[26]  Waiting until after the opt-in period has expired will permit a more robust analysis at the second stage.  Accordingly, I find that only a first-stage analysis is now required.

### 2.   *Plaintiffs have demonstrated that the shuttle-bus drivers may be similarly situated.*

To show that the shuttle-bus drivers at Jacob are similarly situated, plaintiffs offer their verified interrogatory responses and the transcript from the deposition of Jacob's FRCP 30(b)(6) witness.  In his verified interrogatory responses, Leonardo Dualan attests that "he worked approximately 60-66 hours per week"[27] or "an average of 60-70 hours per week"[28] "as a shuttle bus driver, taking passengers between the airport and hotels."[29]  Dualan continues that he "was not paid at least a minimum wage for this time, nor was he paid overtime for the additional overtime hours he worked per week."[30]  Dualan "is unsure of how his pay was calculated, however, he is informed and believes that it was calculated based upon 20-25% of the fares he received."[31]  Dualan attests that he "did not have an hourly rate of pay"[32] and that his pay stubs

---

[26] *Gortat v. Capala Bros.*, 07-CV-3629 (ILG), 2010 WL 1423018 at *10 (E.D.N.Y. Apr. 9, 2010), *aff'd sub nom. Gortat v. Capala Bros.*, 568 F. Appx. 78 (2d Cir. 2014).

[27] ECF 63-3 at 5 (response to interrogatory no. 3).

[28] *Id.* at 12 (response to interrogatory no. 13), 15 (response to interrogatory no. 18), 16 (response to interrogatory no. 19).

[29] *Id.* at 9 (response to interrogatory no. 9).

[30] *Id.* at 12 (response to interrogatory no. 13).

[31] *Id.*

[32] *Id.*

"frequently reflected a 'cash tip,' which was credited towards his pay, but was then deducted from the amount [that he] was actually paid by [Jacob]."[33]  According to Dualan, his "pay stubs would often reflect that [he] received cash tips when [he] had not actually received those tips."[34]  Dualan also states that his pay stubs "frequently reflected deductions from his pay for "DAMAGE," "Vehicle Damage," "OS," and "Over/Short."[35]  Dualan believes that Jacob continues to make "deductions from shuttle bus driver pay for other reasons, including lost luggage."[36]

Dualan's statements are corroborated by Jamin Vergara[37] and Zoltan Nemeth.[38]  Vergara attested in his verified interrogatory responses that he worked "approximately 50-60 hours per week"[39] at Jacob "as a shuttle bus driver" and "was responsible for picking up passengers at the airport and dripping them off at various hotels and picking up passengers at hotels and taking them to the airport."[40]  Like Dualan, Vergara attests that he "was not paid at least a minimum wage for this time, nor was he paid overtime for the additional hours he worked per week over 40."[41]  Vergara was "originally paid a commission of 30% on the fares he received" and, "[a]t

---

[33] *Id.* at 12–13 (response to interrogatory no. 14).

[34] *Id.* at 13 (response to interrogatory no. 14).

[35] *Id.* at 13 (response to interrogatory no. 15).

[36] *Id.*

[37] *See* ECF 63-4 at 12 (response to interrogatory no. 13), 13 (response to interrogatory no. 14), 13–14 (response to interrogatory no. 15).

[38] *See* ECF 63-5 at 11 (response to interrogatory no. 13), 12 (response to interrogatory no. 14), 12–13 (response to interrogatory no. 15).

[39] ECF 63-4 at 5 (response to interrogatory no. 3), 12 (response to interrogatory no. 13), 15–16 (response to interrogatory no. 18), 16 (response to interrogatory no. 19).

[40] *Id.* at 9 (response to interrogatory no. 9).

[41] *Id.* at 12 (response to interrogatory no. 13).

times, this resulted in [his] being paid as little as $3.30 for a 10-hour shift."[42]  Vergara likewise attests that his pay stubs reflected tips that he did not receive.[43]

Nemeth attests in his verified interrogatory responses that he worked "approximately 50-70 hours per week"[44] at Jacob and that his "job duties were picking up and dropping off passengers from the airport and hotels."[45]  Nemeth also attests that he "was not paid at least a minimum wage for this time, nor was he paid overtime for the additional hours he worked per week."[46]  Further, he "was paid a commission of 35% of the fares received."[47]  Finally, Nemeth swears that his pay stubs reflected tips that he never received.[48]

Jacob criticizes plaintiffs for relying on their verified interrogatory responses instead of submitting affidavits that were prepared specifically for their motion.[49]  But plaintiffs correctly reply that verified interrogatory responses are "'evidence.'"[50]  And, as required under FRCP 33(b)(3), the plaintiffs answered the interrogatories separately, in writing, and under oath.[51]

---

[42] *Id.* at 12 (response to interrogatory no. 13).

[43] *Id.* at 13 (response to interrogatory no. 14).

[44] ECF 63-5 at 5 (response to interrogatory no. 3).

[45] *Id.* at 9 (response to interrogatory no. 9).

[46] *Id.* at 11 (response to interrogatory no. 13).

[47] *Id.*

[48] *Id.* at 12 (response to interrogatory no. 14).

[49] ECF 68 at 9–12.

[50] ECF 69 at 4 (quoting *Melius v. Natl. Indian Gaming Commn.*, CIV A 98-2210, 2000 WL 1174994, at *1 (D.D.C. July 21, 2000)); *see also Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 635 (7th Cir. 1996) ("Answers to interrogatories are evidence."); *Haworth v. Patel*, 1:06-cv-1373-LJO-NEW (TAG), 2007 WL 1834696, at *2 (E.D. Cal. June 26, 2007) ("Functions of interrogatories include obtaining evidence, information which may lead to evidence and admissions, and to narrow issues to be tried.").

[51] ECF 63-3 at 18; ECF 63-4 at 18; ECF 63-5 at 17.

Additionally, plaintiffs' sworn statements that their pay was commission-plus-tips based is supported by Jacob's FRCP 30(b)(6) witness, who testified in deposition that, starting in January 2010, Jacob paid its shuttle-bus drivers as follows:

> We took their commissions plus tips as tip credit.  We calculated 25 percent of their commission, whatever rides they turned in for their passenger counts, we calculated for the week, the total number of rides times whatever the ticket was, whether it was $6 a ticket or whether it was a charter, and we paid them either 25 percent—there were a couple of drivers that were 30% commission—and calculated with their tips, whatever tips they reported.[52]

Jacob's FRCP 30(b)(6) witness further testified that the commission-plus-tips pay structure for Jacob's shuttle-bus drivers continued until October 8, 2015, when Jacob "started the new pay structure" and "no longer c[ould] take a tip as a tip credit, and the drivers are paid an hourly rate of minimum wage."[53]

Jacob argues that the deposition testimony of its FRCP 30(b)(6) witness shows that there is not a policy or practice common to the shuttle-bus driver group because "there are different types of shuttle bus drivers performing different types of work assignments. . . ."[54]  But I do not read this witness's testimony as clearly distinguishing among and between different types of shuttle-bus drivers and, regardless, "[a]t this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."[55]  It is inappropriate to weigh the merits of underlying claims here; instead, the issue is "whether potential opt-in plaintiffs may be similarly situated."[56]  Applying the lenient

---

[52] ECF 63-7 at 129:23–130:10.

[53] *Id.* at 217:12–218:6.

[54] ECF 68 at 11 (citing ECF 63-7 at 129–131).

[55] *Lynch*, 491 F. Supp. 2d at 368 (citation omitted).

[56] *Id.* at 368–69 (citing *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has

1    standard for conditional certification and recognizing that only a modest showing is required at

2    this preliminary stage,[57] I find that plaintiffs have demonstrated, sufficiently for this stage of the

3    certification process, that the potential opt-in plaintiffs who were or are shuttle-bus drivers for

4    Jacob were subject to the same commission-plus-tips-based pay policies as plaintiffs claim.

5

6    ### 3.    The three-year statute of limitations under 29 U.S.C. § 255(a) is an appropriate basis for the temporal scope at this stage of the case.

7        Somewhat buried in plaintiffs' motion is their rather conclusory argument that the

8    collective action should reach back three years from the date of the complaint because there are

9    allegations of willfulness, and the statute of limitations under 29 U.S.C. § 255(a) for willful

10   violations of the FLSA is three years.[58]  Jacob responds that 29 U.S.C. § 255's two-year statute of

11   limitations period must be applied, because plaintiffs' allegations are not sufficient to show that

12   Jacob willfully violated the FLSA.

13       The standard for willfulness in an FLSA acton is whether "the employer knew or showed

14   reckless disregard for the matter of whether its conduct was prohibited by the statute. . . ."[59]

15   Factual determination of the scope of the collective action can be appropriate at the second-stage

16   analysis,[60] but we are not at that stage.  Further, "[i]t is the jury's province to decide which

17   limitations period, two or three years, applies in light of the plaintiffs' evidence that the

18   defendants acted willfully."[61]

19

20

---

21   been violated."); *Hoffmann*, 982 F. Supp. at 262 ("[T]he Court need not evaluate the merits of
22   plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can
     exist here.").

23
     [57] *Leuthold*, 224 F.R.D. at 467 (citations omitted).
24
     [58] ECF 63 at 7.
25
26   [59] *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

27   [60] *Leuthold*, 224 F.R.D. at 467.

28   [61] *Bankston v. St. of Ill.*, 60 F.3d 1249, 1253 (7th Cir. 1995).

Although it is a close call, I find that plaintiffs have provided enough support to make the threshold showing of willfulness required under the first-stage analysis. Plaintiffs provided sworn interrogatory responses stating that cash tips were credited on their pay stubs toward their pay, but were then deducted from the amounts that they were actually paid.[62] Each plaintiff also stated that his "pay stubs would often reflect that [he] received cash tips when [he] had not actually received those tips."[63] Further, that employees were required to sign forms stating the amount of tips that they received, which was reflected on their pay stubs, and were terminated, threatened with termination, demoted to other positions like security, car wash, or janitorial, or believed they would be fired if they did not sign those forms even if the amounts listed on them for tips received was not accurate.[64] Accordingly, I find that the proper temporal scope for this conditionally certified action is from July 10, 2011, to the present.

### 4. *The scope of this collective-action group includes both of plaintiffs' claims under the FLSA.*

Jacob argues that it is unclear from plaintiffs' motion what claims they are seeking conditional certification for.[65] Although plaintiffs' motion is not a paragon of clarity, I surmise that they seek to conditionally certify a collective action on their first and second claims, which allege minimum-wage, overtime, and wage-deduction violations under the FLSA. Plaintiffs clearly discuss the minimum-wage and wage-deduction violations in their motion[66] and appear to conflate the minimum-wage violations with ovetime violations, i.e., plaintiffs were not "paid **at**

---

[62] ECF 63-3 at 12–13 (response to request no. 14); ECF 63-4 at 13 (response to request no. 14); ECF 63-5 at 11–12 (response to request no. 14).

[63] ECF 63-3 at 12–13 (response to request no. 14); ECF 63-4 at 13 (response to request no. 14); ECF 63-5 at 11–12 (response to request no. 14).

[64] ECF 63-3 at 14 (response to request no. 16); ECF 63-4 at 14 (response to request no. 16); ECF 63-5 at 13 (response to request no. 16).

[65] ECF 68 at 3–4.

[66] *See e.g.* ECF 63 at 2–3.

1   **least** minimum wage."[67]   Accordingly, I find that conditional certification of the minimum-wage,

2   overtime, and wage-deduction claims on behalf of all current and former shuttle-bus drivers who

3   were employed by Jacob from July 10, 2011, to the present is warranted.

4   **B.     Form of collective-action notice**

5          When an FLSA collective action is conditionally certified, a district court may authorize

6   the named plaintiffs to send notice to "all potential plaintiffs" and "may set a deadline for

7   plaintiffs to join the suit by filing consents to sue."[68]   Having determined at this initial

8   certification phase that persons who were or are employed as shuttle-bus drivers for Jacob from

9   July 10, 2011, to the present are sufficiently similarly situated to receive notice of this FLSA

10   collective action, I next turn to the form of that notice and the consent-to-sue form, both of which

11   have been proposed by plaintiffs.[69]   Jacob has lodged several objections to plaintiffs' proposed

12   forms, which I now resolve in addition to providing my own edits.

13          *1.     Letterhead vs. case caption*

14          The parties disagree about whether the notice should be sent on plaintiffs' counsel's

15   letterhead or the case caption.   I do not find that opening a notice with a case caption suggests

16   judicial endorsement; it merely indicates the pendency of a lawsuit, which this is.   I therefore find

17   that the notice should be sent with the case caption, not on law-firm letterhead.   But the notice

18   proposed by plaintiff includes on the final page a signature block for the court, which is

19   tantamount to a judicial endorsement.   The court's signature block must therefore be deleted

20   from the notice and replaced with a date and signature block for plaintiffs' counsel.

21

22

23

24   [67] *See* ECF 63 at 3, 7 (emphasis added); *see also* ECF 63-2 at 2–3; ECF 63-3 at 12 ("was not paid

25   at least minimum wage for this time, nor was he paid overtime for the additional overtime hours he worked per week"); ECF 63-4 at 12; ECF 63-5 at 11.

26   [68] *Advanced Textile Corp.*, 214 F.3d at 1064 (9th Cir. 2000); *see also Hoffmann-La Roche Inc.*,

27   493 U.S. at 169.

28   [69] ECF 63-2 at 2–4 (proposed notice); ECF 63-2 at 5–6 (proposed consent-to-sue form).

### 2. *Neutrality of language*

Jacob argues that some of the language used in the notice, including the title, is not impartial or neutral.  I agree.  I also note that the title of the notice is confusing because it mentions only the minimum-wage violations, while the body discusses that the lawsuit concerns minimum-wage, overtime, and wage-deduction violations.  Accordingly, the following changes must be made to make the notice more neutral:

- The title on the first page[70] must be deleted and replaced with: "**NOTICE OF YOUR RIGHT TO JOIN A LAWSUIT SEEKING TO RECOVER UNPAID WAGES**"

- The "To" line on the first page[71] must be deleted and replaced with: "**To: All current and former shuttle-bus drivers employed by Jacob Transportation Services, LLC d/b/a Executive Las Vegas ("Executive") after July 10, 2011.**"

- The second sentence in the "1. **WHAT THE LAWSUIT IS ABOUT**" section on the first page must be deleted and replaced with: "Plaintiffs are former shuttle-bus drivers for Executive who allege that they were not paid a minimum wage for all hours that they worked."

- The last sentence in the "1. **WHAT THE LAWSUIT IS ABOUT**" section on the second page[72] must be deleted and replaced with: "Executive denies that it violated the FLSA and claims that the shuttle-bus drivers were properly paid under the FLSA's minimum-wage and overtime provisions and other applicable laws."

---

[70] ECF 63-2 at 2 (currently providing "Notice of Opportunity to Join a Lawsuit to Recover Back Unpaid Minimum Wages" (emphasis omitted)).

[71] *Id.* (currently providing "To:  All current and former Shuttle Bus Drivers employed by Jacob Transportation Services, LLC d/b/a/ Executive Las Vegas ("Executive") after July 10, 2011 who were not paid at least minimum wage for each hour worked." (Emphasis omitted)).

[72] *Id.* at 3 (currently providing "Executive denies Plaintiffs' allegations, and deny that they are liable for any back pay or liquidated damages.").

13

• The "2. **WHO CAN PARTICIPATE IN THE LAWSUIT**" section on the second page must be deleted and replaced with: "You can join the case if you worked for Executive as a shuttle-bus driver from July 10, 2011, to the present.  If you meet this description and believe that Executive failed to compensate you a minimum wage for each hour worked, failed to compensate you properly for time worked above 40 hours in a work week, or improperly deducted your wages, you may have the right to make an FLSA claim against Executive in this lawsuit to recover unpaid wages, liquidated damages, costs, and attorneys' fees.  It is entirely your own decision whether to join this lawsuit."

### 3.   *Court expresses no opinion on the merits*

Jacob next argues that the first page should state that the court does not express any view about the merits or defenses in this case.  I agree and also note that the penultimate paragraph on the third page could be interpreted as an endorsement by the court.  Accordingly, the penultimate paragraph on the third page[73] of the notice must be deleted in its entirety, and a provision must be inserted on the first page below the "To" line stating: "**Note:  This notice is not an expression of any opinion by the court about the merits of any claims asserted by the plaintiffs or defenses asserted by the defendant as this is ongoing litigation and those issues have not yet been decided.**"

### 4.   *Options box*

Jacob argues that the notice should include a table of the choices being presented to the recipient and that the recipient's choice is voluntary.[74]  I find that the language of the proposed order already clearly sets forth the recipient's rights and options, and with the edits proposed in

---

[73] ECF 63-2 at 4 (currently providing "This Notice and its Contents Have Been Authorized by the Federal District Court, Honorable Jennifer A. Dorsey, United States District Judge of the U.S. District Court for the District of Nevada.  The Court Has Taken No Position in this Case Regarding the Merits of Plaintiffs' Claims or of Executive's Defenses. (Emphasis omitted)).

[74] ECF 68 at 18.

14

this order, makes clear that their choice is voluntary.  I therefore decline Jacob's stylistic request to include an option box in the notice.

### 5.    *Plaintiffs' counsel's website information*

Jacob also argues that the second page of the proposed notice includes plaintiffs' counsel's website.[75]  I do not see a website listed anywhere in the proposed notice.  The notice does include an email address for plaintiffs' counsel where potential opt-in plaintiffs can send their consent-to-sue forms and request further information, which I find is appropriate.

### 6.    *Plaintiffs' counsel's contingency-fee agreements*

Jacob complains that the notice provides that opt-in plaintiffs who do not appear pro se or obtain their own counsel will be bound by the contingency-fee agreement that plaintiffs entered into with their counsel, but does not identify the percentage fee or how it is calculated.  I agree that this information should be included in the notice.  Accordingly, the "7. **YOUR LEGAL REPRESENTATION IF YOU JOIN**" section on the third page of the notice[76] must be edited to include the percentage fee that plaintiffs agreed to pay their counsel and how the agreement provides that fee will be calculated.

### 7.    *Length of opt-in period*

Plaintiffs ask me to set a 90-day opt-in period[77] and Jacob offers no opinion on this subject.[78]  Because of the potential size of the putative class, and to permit recipients of the notice sufficient time to consider it and their options, I find that a 90-day return deadline is

---

[75] *Id.* at 19.

[76] ECF 63-2 at 4.

[77] ECF 63 at 9.

[78] *See generally* ECF 68.

reasonable.[79]  This number is also consistent with the 60- to 90-day periods routinely approved in this circuit.[80]  The 90 days will begin running on the date that the notice is mailed.

### 8. Manner of service

Plaintiffs submit that service of the notice and consent-to-sue form should be twofold: (1) direct mailing by first-class mail to the last known addresses for all current and former employees of Jacob covered by the collective action; and (2) posting the notice in a conspicuous place where shuttle-bus drivers congregate at Jacob's business address.[81]  Jacob offers no opinion on this issue.[82]  Accordingly, I grant plaintiffs' request to serve these documents through first-class mail to the last-known addresses for all current and former employees of Jacob covered by the collective action and to require that Jacob post the notice in a conspicuous place where shuttle-bus drivers congregate at Jacob's business address.

### 9. Scope of contact information

In order to effectuate service of the collective-action notice and consent-to-sue form, plaintiffs ask me to require Jacob to provide plaintiffs' counsel with "a computer-readable data file containing the names, addresses, and telephone numbers" of the potential opt-in plaintiffs.[83]  I already approved plaintiffs' request to serve the notice via U.S. mail, and plaintiffs have not demonstrated a need for the potential opt-in plaintiffs' telephone numbers.  I therefore reserve for another day whether the potential opt-in plaintiffs' telephone numbers must be tendered in discovery.  Jacob is ordered to provide plaintiffs' counsel with the names and last-known addresses for all employees covered by the collective action within 60 days and in Microsoft Excel or compatible electronic format.

---

[79] *See e.g. Benedict*, 2014 WL 587135, at *13, 15.

[80] *See id.* (collecting cases).

[81] ECF 63 at 10.

[82] *See generally* ECF 68.

[83] ECF 63 at 10.

*10.*     ***Inconsistency between the notice and the consent-to-sue form***

Plaintiffs identify the consent-to-sue form as the "attached 'Consent to Become Party Plaintiff' form" in several places in their collective-action notice.[84]  But the consent-to-sue form that plaintiffs propose is entitled "Consent to Join Collective Action (Fair Labor Standards Act, 29 U.S.C. § 216(b))."[85]  Plaintiffs must choose a title and make it consistent between the notice and consent.

*11.*     ***Confusing language***

Jacob points out that the final sentence on the second page of the notice in the "4. **EFFECT OF JOINING THIS LAWSUIT**" section[86] appears to provide that those plaintiffs choosing to opt-in but as pro se or with their own attorneys must still complete and send in the attached consent-to-sue form.[87]  I agree.  Plaintiffs must either revise the language of that sentence to be more clear or provide a statement instructing those plaintiffs that they are not to use the attached consent-to-sue form.  Plaintiffs must also correct, in all applicable places in the notice, that the consent-to-sue or opt-in forms must be sent no later than 90 days from the date that the notice is mailed.[88]

*12.*     ***The parties must meet and confer before resubmitting the proposed forms.***

The parties are directed to meet and confer and resubmit proposed notice and consent-to-sue forms **by April 8, 2016**, for the court's approval as part of a motion for approval of collective-action forms.  In addition to the issues decided in this order, the parties must address during their meet and confer Jacob's request to review an example of the envelope that plaintiffs propose to use for serving the notice and consent-to-sue form on the potential opt-in plaintiffs, as

---

[84] *See e.g.* ECF 63-2 at 3.

[85] ECF 63-2 at 5.

[86] ECF 63-2 at 3.

[87] ECF 68 at 20.

[88] Plaintiffs' proposed notice currently provides only 60 days to submit the consent-to-sue or opt-in forms.  *See e.g.* ECF 63-2 at 3.

17

well as Jacob's objection that the proposed consent-to-sue form contains many of the same defects as the notice.[89]  For further guidance, the parties are instructed to review the previously approved collective-action notice and consent-to-sue forms that are attached as Appendix A and B to my order in *Cardoza v. Bloomin' Brands, Inc.*, 2:13-cv-01820-JAD-NJK, 2014 WL 5454178, at *7–12 (D. Nev. Oct. 24, 2014).

**C.    Appointment of interim class counsel**

Plaintiffs assume without asking that they will perform the role of interim class counsel: their proposed opt-in authorization form states, "I authorize The Bourassa Law Group, LLC, and any associated attorneys as well as any successors or assigns, to represent me with my claims by joining my claims to an existing lawsuit against Defendant. . . ."[90]  Federal Rule of Civil Procedure 23 authorizes district courts to designate interim counsel to act on behalf of a putative class before the final certification is made.[91]  But it would be imprudent for me to simply permit plaintiffs' counsel to become counsel for all opt-in plaintiffs without some analysis of counsel's fitness for that role.[92]  Counsel does not even mention their desire to perform the role of interim counsel for those putative plaintiffs who return their opt-in forms, but the form automatically appoints them for this job.  If plaintiffs' counsel desire to be designated as interim counsel for the opt-in plaintiffs, they must make that request of the court **by April 8, 2016**.

**D.    Equitable tolling**

Finally, plaintiffs ask me to equitably toll the statute of limitations either from the date that the plaintiffs filed their motion to certify or from the date that the plaintiffs filed their

---

[89] ECF 68 at 20.

[90] ECF 63-2 at 5.

[91] FED. R. CIV. P. 23(g)(3).

[92] *See e.g. Flores v. Velocity Exp., Inc.*, 12-cv-05790-JST, 2013 WL 2468362, at *10 (N.D. Cal. June 7, 2013) (discussing appointment of interim counsel in conditionally certified FLSA collective action).

complaint until notice is disseminated to the potential plaintiffs.[93]   Plaintiffs' only authority for this request is that the U.S. Supreme Court has stated that an equitable tolling provision "is read into every federal statute of limitations."[94]   Jacob responds that these circumstances do not warrant the "sparingly" applied doctrine of equitable tolling.[95]   I disagree and I find that a minimal amount of equitable tolling is warranted, but I also find that plaintiffs have not shown that tolling reaching back to the date of the complaint is necessary at this time.

The Ninth Circuit held in *Partlow v. Jewish Orphans' Home of So. Cal.* that the FLSA statute of limitations could be equitably tolled.[96]   In general, "[e]quitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control make it impossible to file a claim on time."[97]   Another court in this district noted in *Small v. Univ. Med. Center of So. Nev.* that, "[a]s an equitable matter, the inquiry should focus on the fairness to both parties."[98]   "As part of the determination of the possible prejudice to the defendant, the court should ask whether the defendant was aware of the potential scope of liability when the complaint was filed."[99]   That court continued, "[o]f particular relevance here, . . . 'the time for a court to rule on a motion . . . for certification of a collective action in an FLSA case [ ] may be deemed an "extraordinary

---

[93] ECF 63 at 10.

[94] ECF 63 at 10 (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)).

[95] ECF 68 at 15 (citations omitted).

[96] *Partlow v. Jewish Orphans' Home of So. Cal.*, 645 F.2d 757, 760–61 (9th Cir. 1981), *abrogated on other grounds by Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989).

[97] *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (citing *Alvarez-Machain v. U.S.*, 107 F.3d 696, 700 (9th Cir. 1996)).

[98] *Small v. Univ. Med. Center of So. Nev.*, 2:13-cv-00298-APG-PAL, 2011 WL 3043454, at *3 (D. Nev. June 14, 2013) (citing *Adams v. Inter-Con Sec. Systems, Inc.*, 242 F.R.D. 530, 543 (N.D. Cal. 2007)).

[99] *Id.* (citing *Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181–82 (D. Colo. 2012)).

circumstance" justifying application of the equitable tolling doctrine.'"[100]  I agree with the *Small* court's rationale and adopt its reasoning.

Because plaintiffs' motion for conditional certification has been ripe but unresolved for more than six months, I find that the potential opt-in plaintiffs, like those in *Small*, could be unfairly prejudiced by the court's delay in resolving the motion.  Jacob, on the other hand, would not be unfairly prejudiced because it was aware from the outset that the scope of its potential liability extends to all shuttle-bus drivers who worked for Jacob during the statutory period.  Only Jacob possesses information on the identity of the people who fall within the scope of this collective-action group.  I thus toll the statute of limitations starting 30 days after plaintiffs' motion became ripe, or October 19, 2015.  And like in *Small*, "to 'counter[  ] the advantage defendant[ ] would otherwise gain in withholding potential plaintiffs' contact information until the last moment[,]'"[101] the tolling continues until Jacob provides the requisite contact information to plaintiffs' counsel.  If a plaintiff opts in before the date of Jacob's compliance, the tolling period for that plaintiff runs from October 19, 2015, until the date of that plaintiff's filing of written consent to opt-in with the court.  Tolling does not apply to the plaintiffs who opted in before October 19, 2015.

### Conclusion

Accordingly, IT IS HEREBY ORDERED that **plaintiffs' motion for conditional certification of an FLSA collective action and related relief [ECF 63] is GRANTED in part and DENIED in part** consistent with this order.

IT IS FURTHER ORDERED that:

- Jacob must provide plaintiffs' counsel with the names and last-known addresses of all employees covered by the collective action within 60 days and in Microsoft Excel or compatible electronic format;

---

[100] *Id.* (quoting *Yahraes v. Restaurant Assocs. Events Corp.*, 10-CV-935 (SLT), 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011)).

[101] *Id.* (quoting *Adams*, 242 F.R.D. at 543).

- The parties must **meet and confer and resubmit** proposed notice and consent-to-sue forms **by April 8, 2016**, for the court's approval;

- If plaintiffs' counsel desire to be designated as interim counsel for the opt-in plaintiffs, they must make that request of the court **by April 8, 2016**;

- Upon court approval of the notice and consent-to-sue forms, plaintiffs must serve them by first-class mail;

- Upon court approval of the notice, Jacob must post it in a conspicuous place where shuttle-bus drivers congregate at Jacob's business address;

- The potential plaintiffs shall have 90 days from the date of mailing of the notice and consent-to-sue forms to submit their opt-in forms; and

- The statute of limitations for plaintiffs' FLSA claims is **TOLLED from October 19, 2015, until Jacob provides the requisite contact information to plaintiffs' counsel.** If a plaintiff opts in before the date of Jacob's compliance, the tolling period for that plaintiff runs from October 19, 2015, until the date of that plaintiff's filing of written consent to opt-in with the court. Tolling does not apply to the plaintiffs who opted in before October 19, 2015.

DATED: March 25, 2016

_____
Jennifer A. Dorsey
United States District Judge